UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
ALFONZO FORNEY,

          *Plaintiff*,                          **18 CV 1966**

    *v*.

                                                   **COMPLAINT**

VIVID MECHANICAL LLC,

          *Defendant.*
------------------------------------------------------------------------×

      Plaintiff Alfonzo Forney, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant Vivid Mechanical LLC ("Vivid") as follows:

## PRELIMINARY STATEMENT

    1.      Mr. Forney, who is a gay man, was employed as a Helper at Vivid, a New York City–area construction company. During Mr. Forney's employment, Vivid allowed Mr. Forney's supervisors and coworkers to regularly call him homophobic slurs like "faggot" and "*maricón*" and supported workers who refused to work with Mr. Forney because he is gay. After Mr. Forney complained to Vivid's management about sexual orientation discrimination, as well as dangerous safety violations on Vivid's work site, Vivid immediately terminated his employment.

    2.      Mr. Forney seeks damages and costs against Vivid for discriminating against him based on his sexual orientation by subjecting him to a hostile work environment and terminating his employment and retaliated against him for his complaints about discrimination, in violation of Title VII of the Civil Rights of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq.*

3. Mr. Forney also seeks damages and costs against Vivid for retaliating against him for his complaints about health and safety violations, in violation of the New York State Labor Law (NYLL), N.Y. Lab. Law § 740.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

4. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under Title VII.

5. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL and NYLL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

7. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a Right-to-Sue letter dated February 21, 2018, relating to the discriminatory acts described in this Complaint. This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

8. Plaintiff respectfully requests a trial before a jury.

## PARTIES

9. Mr. Forney, at all times relevant hereto, was and is a resident of New York County in the State of New York.

10. Upon information and belief, at all times relevant hereto, Vivid was and is a limited liability company organized under the laws of the State of New York with headquarters located at 45-39 Davis Street, Long Island City, New York 11101 in Queens County.

## STATEMENT OF FACTS

11. Mr. Forney identifies as a gay man.

12. In and around March 2017, Mr. Forney applied for a position as a Helper at Vivid.

13. Mr. Forney interviewed for the position with Diego Figueroa on or about March 13, 2017, and was hired.

14. Upon information and belief, at the time of Mr. Forney's hire, neither Mr. Figueroa nor any other Vivid employee was aware of Mr. Forney's sexuality.

15. Mr. Forney began working at Vivid on or about March 17, 2017.

16. Mr. Forney started working at Vivid's Purves Street location in Long Island City, NY, on or about March 20, 2017.

17. Mr. Forney was transferred to Vivid's 5 Beekman Street, New York, NY 10038 work site in and around late April or early May 2017.

18. Mr. Forney did not openly discuss his sexual orientation at work, but over the course of his first few months at Vivid, his coworkers and supervisors began to assume that he was gay because he regularly wore a gay pride T-shirt to work.

19. In and around May 2017, Grafton McAlmont (a Foreman at Vivid and Mr. Forney's direct supervisor) asked Mr. Forney directly, "Are you a fucking faggot?"

20. Mr. Forney did not reply to this highly offensive question.

21. Mr. McAlmont took Mr. Forney's silence as affirmation and, from that point forward, began subjecting Mr. Forney to discrimination and harassment based on his sexual orientation.

22. For example, on many occasions after this incident, Mr. McAlmont addressed Mr. Forney with the gendered slur "bitch," to which Mr. Forney objected to no avail.

23. On or about June 26, 2017, Vivid transferred Mr. Forney to its 61 Ninth Avenue, New York, NY 10011 work site (the "Location"), where the anti-gay discrimination and harassment intensified.

24. Mr. Forney's coworkers and supervisors at the Location—including Mr. McAlmont, Victor Echavarria (Welder), and Issa Vincent (Welder)—frequently made discriminatory comments to Mr. Forney and referred to him using homophobic slurs.

25. On or about June 29, 2017, Mr. Echavarria, not realizing that Mr. Forney understands Spanish, referred to Mr. Forney in Spanish as "*maricón*" and "*una mariposa*"—offensive, derogatory terms used to refer to gay men—when speaking with other Vivid employees.

26. That same day, Mr. Vincent told Mr. Forney, "I don't roll that way [referring to being gay], and I don't like working around people who are gay."

27. Mr. Forney reported these incidents to Mr. McAlmont, who refused to address the situation.

28. Instead, Mr. McAlmont joined the harassment and mocked and chastised Mr. Forney for his complaints about discrimination, telling Mr. Forney to "man up" and "take your ass back to work."

29. On or about the following day, June 30, 2017, Mr. Forney wore his gay pride T-shirt to work.

30. When Mr. Forney arrived at work and reported to the construction office, Mr. Vincent aggressively hit Mr. Forney with and his shoulder and said, "This fucking gay shit is crazy," showing his disapproval to Mr. Forney's shirt.

31. Mr. Forney asked Mr. Vincent to stop making derogatory comments about Mr. Forney's sexual orientation, which Mr. Vincent ignored.

32. When Mr. Forney later asked Mr. Vincent if he needed help with any work, Mr. Vincent replied, "I told you, I don't want you faggot-ass nigga working around me."

33. Mr. Forney again reported the discriminatory behavior to Mr. McAlmont, who, as before, refused to correct the discrimination and harassment and reprimanded Mr. Forney for his complaints, telling him: "I need workers here, not little girls who cry over every little thing.  You want to quit?  Go ahead and quit."

34. When Mr. Forney pressed Mr. McAlmont for a meaningful response to his complaints about discrimination, Mr. McAlmont reluctantly agreed to "look into it."

35. Mr. Forney heard nothing further about Mr. McAlmont's supposed investigation into his complaints, and the hostility and harassment continued unabated.

36. Mr. McAlmont, Mr. Vincent, and Mr. Echavarria made discriminatory comments to Mr. Forney about Mr. Forney's sexual orientation on a near-daily basis, regularly calling Mr. Forney "faggot," "bitch," "*maricón*," and "*mariposa*."

37. Mr. McAlmont, Mr. Vincent, and Mr. Echavarria avoided working with Mr. Forney and glared at Mr. Forney when he was nearby, ostracizing Mr. Forney from other employees and impeding his ability to perform his work.

38. On or about July 11, 2017, Mr. Forney was working as a Fire Guard, a position which required Mr. Forney to observe Vivid's workers to ensure that work was being performed in accordance with safety regulations promulgated by the Fire Department of the City of New York (FDNY).

39. While performing his fire guard duties, Mr. Forney noticed that a Welder, Roberto Perralta, was working without a hot work permit and without a fire guard present, both of which violate FDNY regulations.

40. Mr. Forney raised the issue to Mr. Perralta, informing Mr. Perralta that his actions were dangerous and violated FDNY regulations and instructing him to perform his work in accordance with the FDNY safety code.

41. When Mr. Perralta refused to comply, Mr. Forney promptly shut off Mr. Perralta's welding equipment and notified Mr. McAlmont of the dangerous safety violation, in accordance with his assigned duties.

42. Yet Mr. McAlmont refused to rectify the problem, aggressively telling Mr. Forney, "Just fucking do your work."

43. Deeply upset and frustrated with Vivid's utter failure to respond, Mr. Forney replied that, if Mr. McAlmont did not address his complaints, he would resign and report the serious issues he had raised—including Vivid's ongoing sex and sexual orientation discrimination and harassment—to Mr. McAlmont's superiors, explicitly stating that he believed Vivid's conduct was unlawful.

44. In response, Mr. McAlmont called all of the Location's employees—including Mr. Forney, Mr. Vincent, Mr. Echavarria, Mr. Perralta, Alberto Huertas, Phil Harris, Edwin Ramirez, and Carlos Segura—to a meeting.

45. Mr. McAlmont began this meeting by saying, "We've got an issue with [Mr. Forney]. He feels you guys don't work with him because of his sexuality. He feels you harass him."

46. Mr. Vincent affirmed this, stating, "I don't want to work around gay people," to which Mr. Echavarria nodded in agreement.

47. Throughout the meeting, Mr. McAlmont solicited input from all of Vivid's employees except Mr. Forney.

48. The experience was incredibly embarrassing and offensive to Mr. Forney.

49. Mr. McAlmont refused to allow Mr. Forney to speak and cut him off every time he attempted to respond or explain the situation.

50. As the meeting ended, Mr. McAlmont received a call from Vivid's Superintendent, an individual known to Mr. Forney only as "Oscar."

51. Mr. McAlmont then asked Mr. Forney to come upstairs, where Mr. Forney waited outside while Mr. McAlmont spoke with Oscar.

52. Mr. McAlmont then invited Mr. Forney back inside and stated, "We don't need this here. I'm not going against all my guys for one guy. What do you want to do? Either you can quit, or we'll send you to another site."

53. Mr. Forney objected, asking whether Mr. McAlmont cared about the truth concerning the ongoing discrimination and harassment.

54. Mr. McAlmont responded, "This has nothing to do with the truth."

55. Mr. Forney informed Mr. McAlmont and Oscar that he would rather be transferred to a different work site than fired.

56. Once again, Oscar and Mr. McAlmont left the office to speak privately without Mr. Forney.

57. After Mr. Forney had waited for several minutes without any further communication from Oscar or Mr. McAlmont, Mr. Forney stepped out of the office and asked what was going on and if Vivid had decided on a work site to which to transfer him.

58. Oscar replied only, "Just go home. We'll give you a call."

59. Mr. Forney went home, as Oscar had directed him to do.

60. Later that afternoon, between approximately 3:00 p.m. and 4:00 p.m., Mr. Forney received a call from an unknown male employee in Vivid's Human Resources department, who told Mr. Forney that his employment was terminated, effective immediately: "Due to downsizing and the situation that occurred today, your services are no longer needed."

61. At the time of Mr. Forney's termination, his regular pay rate was $14.00 per hour ($21.00 per hour with overtime), and he worked approximately 40 to 50 hours per week.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII

62. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 61 with the same force as though separately alleged herein.

63. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of sex, including sexual orientation.

64. Defendant discriminated against Plaintiff on the basis of his sexual orientation by subjecting him to a hostile work environment because he is a gay man, including discriminatory comments, harassment, and homophobic slurs.

65. As such, Defendant has violated Title VII.

66. As a direct and proximate consequence of Defendant's sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

67. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
### Wrongful Termination in Violation of Title VII

68. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 67 with the same force as though separately alleged herein.

69. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of sex, including sexual orientation.

70. Defendant discriminated against Plaintiff on the basis of his sexual orientation by terminating his employment because he is a gay man.

71. As such, Defendant has violated Title VII.

72. As a direct and proximate consequence of Defendant's sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

73. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII

74. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75. Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

76. Plaintiff engaged in protected activity under Title VII when he properly complained to Defendant about discriminatory conduct unlawful under Title VII.

77. Defendant retaliated against Plaintiff by subjecting him to further discrimination and harassment and, ultimately, terminating his employment.

78. As such, Defendant has violated Title VII.

79. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

80. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

81. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 80 with the same force as though separately alleged herein.

82. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of sexual orientation.

83. Defendant violated the NYCHRL when it subjected Plaintiff to a hostile work environment based on his sexual orientation, including discriminatory comments, harassment, and homophobic slurs.

84. As a direct and proximate consequence of Defendant's sexual orientation discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

85. Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### FIFTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

86. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 85 with the same force as though separately alleged herein.

87. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of sexual orientation.

88. Defendant violated the NYCHRL when it terminated Plaintiff's employment because he is a gay man.

89. As a direct and proximate consequence of Defendant's sexual orientation discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

90. Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

91.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

92.     The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

93.     Plaintiff engaged in protected activity under the NYCHRL when he properly complained to Defendant about discriminatory conduct unlawful under the NYCHRL.

94.     Defendant retaliated against Plaintiff by subjecting him to further discrimination and harassment and, ultimately, terminating his employment.

95.     As such, Defendant has violated the NYCHRL.

96.     As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

97.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SEVENTH CAUSE OF ACTION
### Whistleblower Retaliation in Violation of NYLL § 740

98.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 97 with the same force as though separately alleged herein.

99.     At all relevant times, Plaintiff was Defendant's "employee" and Defendant was Plaintiff's "employer" within the meaning of the NYLL.

100. NYLL § 740 prohibits an employer from retaliating against an employee for raising concerns about dangers to the public health and safety.

101. Plaintiff properly complained to Defendant about regulatory violations presenting dangers to the public health and safety.

102. Defendant retaliated against Plaintiff by, among other things, terminating his employment.

103. As such, Defendant has violated the NYLL.

104. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

105. Due to Defendant's retaliation, Plaintiff is entitled to recover back pay, front pay, liquidated damages, interest, and reasonable attorneys' fees and costs related to the action.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial;

B. For the second cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial;

C. For the third cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial;

D. For the fourth cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial;

E. For the fifth cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial;

F. For the sixth cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial;

G. For the seventh cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial; and

H. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 5, 2018

By:  s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
234 Fifth Avenue, 4th Floor, #409
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*